LOGAN LAMBERT V. STATE OF NEBRASKA.

FILED JANUARY 23, 1908. No. 15,055.

1. **Assault with Intent to Inflict Great Bodily Injury: QUESTION FOR JURY.** The term "great bodily injury," as used in section 17b of the criminal code, implies an injury of a graver and more serious character than an ordinary battery; and whether a particular case is within the meaning of the statute is generally a question of fact for the jury.

2. ————: **PRESUMPTIONS.** No wrong, however serious to the person of another, will alone warrant a conviction for an assault with intent to inflict great bodily injury; but, when the injury proved is a natural and necessary consequence of the deliberate and inexcusable act of the accused, the presumption is that it was the result contemplated by him in the commission of the assault.

3. ————: **INTENT: EVIDENCE.** It is not essential to a conviction for such offense that the accused should have intended the precise injury which followed. It is sufficient if it be shown, beyond a reasonable doubt, by the circumstances under which it was inflicted, together with its nature and extent, that great bodily injury was contemplated by the defendant when he made the assault.

4. ————: **INSTRUCTIONS.** In a case where there is competent evidence tending to show that the defendant in making the assault was actuated by motives of hatred, ill will or revenge, it is proper for the court to charge the jury that: "If you should find and believe from all of the evidence, beyond a reasonable doubt, that the defendant assaulted the prosecuting witness, at a time when he had no reasonable apprehension of immediate and impending injury to himself, and to accomplish some unlawful purpose, or from a spirit of retaliation or revenge, then he cannot avail himself of the law of self-defense."

ERROR to the district court for Dakota county: GUY T. GRAVES, JUDGE. *Affirmed.*

*T. L. Sloan, E. R. Bevins* and *Sullivan & Griffin,* for plaintiff in error.

*W. T. Thompson, Attorney General,* and *Grant G. Martin, contra.*

BARNES, C. J.

Logan Lambert, defendant in the court below, was convicted of the crime of assault with intent to commit great bodily injury upon one Joseph Schell, and from a judgment of the district court for Dakota county sentencing him to imprisonment in the penitentiary for the term of one year he has prosecuted error to this court.

Defendant's first contention is that the verdict and judgment are not sustained by the evidence; and the rule that the words "great bodily injury" imply an injury of a graver and more serious character than an ordinary battery is invoked by him in support of his contention. It appears that the prosecuting witness was a Roman Catholic priest, who had charge, under the authority of the bishop of his diocese, of the Indians at the Winnebago reservation in Thurston county, and was living on the reservation at the time the assault in question was committed; that on the 13th day of April, 1905, the prosecuting witness, who for convenience will be hereafter called the priest, went to Dakota City, Nebraska, in company with an Indian, to attend a trial before the county judge of Dakota county, wherein one Ed Luikhart was being prosecuted for having assaulted an Indian of the name of St. Cyr. Luikhart was a brother-in-law of the defendant. The priest attended the trial, but was not a witness. After the trial was over, and about the hour of 2 o'clock in the afternoon, he went to Easton's livery barn, where he had left his team, and requested the man in charge to hitch it up for him. While waiting, he walked leisurely back and forth in front of the buggies in the barn. Owing to the inclemency of the weather, he had on a heavy fur overcoat and cap. While he was thus waiting, the defend-

ant came into the barn, walked back to where the priest was, and said: "Father Schell, could I see you for a moment privately?" The priest said: "Certainly." The defendant suggested that they step back, and they walked back to the second stall on the north side of the barn, and stepped into that stall. The defendant then asked the priest: "What do you think I should do about that trouble I am in, in Omaha?" While the priest was looking down, thinking what he should say in answer to the question, he was struck by the defendant, and knocked down. When he tried to raise his head, he saw the defendant had something in his hand two or three inches long. At this instant he felt a kick in the face, and became unconscious. When he regained his consciousness, he found that his face was bleeding copiously, and his jaw was broken in three places. He was assisted to a private house, and was then taken to a hospital in Sioux City, where he was treated for several weeks. At the time of the trial he had not recovered from his injury; his face being paralyzed on one side from his jaw to his chin.

It is disclosed by the record that the priest had been looking after the welfare of the Indians, and had been active in trying to prevent the unlawful sale of intoxicating liquors to them. The defendant and several of his associates had been engaged in such unlawful sales, commonly called "bootlegging," and the priest had therefore incurred their bitter enmity. According to the testimony, the defendant was an exsaloon-keeper, and had served a short term in the federal penitentiary at Sioux Falls, South Dakota, for introducing intoxicating liquors on the reservation, and the priest had been somewhat active in assisting the prosecution of such offenses. It appears that the defendant assaulted him without warning; that while he was in an attitude of listening to an inquiry he was knocked down, and rendered unconscious, and while in the act of trying to rise from the ground the defendant kicked him in the face. This clearly shows a disposition on the part of the defendant to inflict on his

victim more than an ordinary battery. In any event, the injury inflicted was a very severe one. The priest's jaw was broken in three places, and as a result thereof he was confined to a hospital for several weeks. It also appears that the injury was of a permanent character; that one side of his face, from the jaw to the chin, was paralyzed. This, in connection with the fact that the defendant's brother-in-law had just been charged with assaulting an Indian, that the priest was attending the trial looking after the interest of his charge, that he had been active in bringing the defendant and others who were introducing intoxicating liquors upon the reservation, to justice, shows the motive which prompted the vicious and carefully planned assault. Evidently the jury took the view that the assault was made for the purpose of chastising the priest for the real or imaginary grievance which the defendant and his friends had against him, and with the intention of inflicting upon him great bodily injury. The evidence of the state as to the nature and manner of the assault, if believed by the jury, and the extent of the injury inflicted thereby, was amply sufficient to show an intent on the part of the defendant to inflict great bodily injury upon his victim. The facts of this case are very similar to those in *Murphey v. State*, 43 Neb. 34, where a verdict finding the defendant guilty of assault with intent to inflict great bodily injury was sustained. There the victim of the assault was an aged man, who was knocked down and kicked by the defendant, and the resulting injury was a broken leg; while in the case at bar the victim of the unlawful assault was a nonresistant, a minister of the gospel, whose mission was to teach the doctrine of "peace on earth, good will to men," and whose only fault seems to have been his zeal in trying to prevent the defendant and others from debauching the Indians, whose temporal and spiritual welfare had been committed to his charge. In *Murphey v. State, supra*, it was said: "But, where the injury proved is the natural and necessary consequence of the deliberate and inexcusable act of the ac-

cused, the inference is that it was the result contemplated by him when the assault was committed, and may be sufficient evidence of the specific intent which is essential to a conviction." That the defendant intended to inflict great bodily injury upon the priest may reasonably be inferred from the facts of this case, and the jury were warranted in finding the defendant guilty of the crime charged against him.

Defendant's second contention is that the court erred in giving paragraph 15 of his instructions. It is said that this instruction has been twice condemned by this court. By it the jury were told, in substance, that, if they should find and believe from all of the evidence, beyond a reasonable doubt, that the defendant assaulted Joseph Schell, at a time when he had no reasonable apprehension of immediate and impending injury to himself, and to accomplish some unlawful purpose, or from a spirit of retaliation or revenge, then the defendant could not avail himself of the law of self-defense. We conclude, from an examination of the record, that this instruction was given because the defendant had testified that, when he knocked the priest down, he thought that he was about to be assaulted by him, and believed that it was necessary for him to strike in self-defense. It is true we condemned a like instruction in *Blair v. State,* 72 Neb. 368; not because the instruction was incorrect as a proposition of law, but because there was no evidence in that case upon which to predicate it. In the case at bar, however, it sufficiently appears from the evidence contained in the record that the defendant might have been actuated in his assault upon the priest by hatred, ill will or revenge, and therefore sought the opportunity presented at that time to gratify his feelings by inflicting upon him great bodily injury. So we conclude that the giving of the instruction complained of was proper, in this case, and the judgment of the trial court should not be reversed therefor.

Having thus disposed of the only contentions presented for our consideration by the brief and argument of the

defendant, it follows that the judgment of the district court should be, and is,

AFFIRMED.