## STATE v. KAKARIKOS.

No. 2661.    Decided January 28, 1915 (146 Pac. 750).

1. CRIMINAL LAW—VERDICT—CONSTRUCTION. In ascertaining the intent of the jury, the language used in the verdict should be given its fair and obvious meaning. (Page 473.)

2. ASSAULT AND BATTERY—TRIAL—VERDICT—"ASSAULT"—ASSAULT WITH A DEADLY WEAPON. Comp. Laws 1907, section 4190, defines an "assault" as an unlawful attempt coupled with a present ability to commit a violent injury on another, while section 4195 declares that every person who, with intent to do bodily harm and without just cause, commits an assault on another with a deadly weapon, shall be punished, etc. The first count of an information charged that accused unlawfully, willfully, feloniously, deliberately, with malice aforethought, and with intent to take the life of another, shot him with a loaded revolver, inflicting grievous wounds, while the second count charged that accused, without just cause, made an assault upon another with a loaded revolver. The cause was submitted on both counts and upon the included offenses of battery and simple assault. The verdict was: Guilty of the crime of assault with a deadly weapon as charged. *Held* that the verdict authorized a sentence for assault with a deadly weapon, that being the obvious intention of the jury.[1] (Page 473.)

3. ASSAULT AND BATTERY—SELF-DEFENSE—GREAT BODILY HARM. While ordinarily a battery committed with the fists would not

---

[1]*State* v. *Jukanovich*, 45 Utah 372; 146 Pac. 289.

place a person in danger of great bodily harm, authorizing recourse to a deadly weapon, the parties' inequality of size and strength might be such as to justify the one assaulted in repelling the attack with a deadly weapon; the question whether the injury inflicted or threatened is great bodily harm being ordinarily for the jury. (Page 476.)

4. CRIMINAL LAW—TRIAL—INSTRUCTIONS—APPLICABILITY TO EVIDENCE. Where the theory of the State was that accused, without any provocation, struck and shot the complaining witness, and accused's contention was that the complaining witness, a man of known bad reputation who had been making threats against his life, assaulted him and was about to draw a revolver when accused shot, an instruction that great bodily harm meant something more than injuries ordinarily resulting from a battery inflicted by hand or first without a weapon was improper, having no basis in the evidence. (Page 476.)

5. CRIMINAL LAW—REVIEW—HARMLESS ERROR—INSTRUCTION. The giving of such instruction was. harmless. (Page 476.)

6. WITNESSES—CROSS-EXAMINATION—SCOPE. Where a witness called by one accused of assault with a deadly weapon testified to the bad reputation of the prosecuting witness and his threats, the State could not on cross-examination inquire whether the witness knew of accused drawing knives or guns on others. (Page 477.)

7. CRIMINAL LAW—EVIDENCE—WITHDRAWAL FROM JURY. Though accused did not object to improper questions, the court should, where the questions themselves might influence the jury, withdraw them at accused's request if they tended to prejudice him. (Page 477.)

8. CRIMINAL LAW—APPEAL—HARMLESS ERROR. A witness called by one accused of assault with a deadly weapon testified to the bad character and threats of the prosecuting witness. On cross-examination the witness was asked whether he knew of accused drawing knives or guns on third persons. *Held* that, as the witness denied knowledge of any such occurrences, the refusal of the court to charge the jury to disregard the incompetent questions was not prejudicial. (Page 477.)

9. CRIMINAL LAW—TRIAL—EVIDENCE—USE OF. Where evidence is competent for only one purpose, the State should not be allowed to use it for others. (Page 480.)

10. CRIMINAL LAW—TRIAL—ARGUMENT OF COUNSEL. In a prosecution for assault with a deadly weapon, the officer who arrested

accused, being called to identify the pistol, in response to a question as to how he secured possession of it, stated that he had a warrant for accused's arrest for threatening to kill. The prosecutor then asked whether that was some other case, and the officer answered in the affirmative. *Held*, that such testimony did not show that accused was arrested for threatening to kill, and argument to that effect was improper. (Page 480.)

11. CRIMINAL LAW—ARGUMENT OF COUNSEL—PROPRIETY. In such case, where accused admitted that the gun in evidence was the one with which he shot the prosecuting witness, the prosecutor, though the incompetent testimony of the officer was received without objection, could not argue to the jury that accused had been arrested for threatening to kill, for the testimony of the officer could be considered only on the question of the identification of the pistol. (Page 480.)

12. CRIMINAL LAW—APPEAL—EXCEPTIONS. Errors in a charge, when not excepted to or assigned as error, will not be considered on appeal. (Page 484.)

13. CRIMINAL LAW—PROSECUTION—BURDEN OF PROOF. Accused, who relies on self-defense, is not bound to establish his defense by a preponderance of the evidence, but should be acquitted if on the whole evidence the jury have a reasonable doubt whether he acted in self-defense[2]. (Page 484.)

14. CRIMINAL LAW—INSTRUCTIONS—BURDEN OF PROOF. Where accused relied on self-defense, instructions that he should be acquitted if the jury found he was justified in assaulting the prosecuting witness, that it should appear to the jury's reasonable satisfaction that at the time of the shooting accused had reasonable cause to believe that he was about to be killed, and that, before his assault could be justified, it must appear to the reasonable satisfaction of the jury that he was justified, were improper as casting upon the accused the burden of establishing self-defense by a preponderance of the evidence. (Page 484.)

Appeal from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Gust Kakarikos was convicted of assault with a deadly weapon. He appeals.

[2]*State* v. *Vacos*, 40 Utah 169; 120 Pac. 497; *State* v. *White*, 40 Utah 342; 121 Pac. 579; *State* v. *Dewey*, 41 Utah 538; 127 Pac. 275.

REVERSED AND REMANDED.

*Willard Hanson* for appellant.

*A. R. Barnes*, Atty. Gen., and *E. V. Higgins* and *G. A. Iverson*, Asst. Attys. Gen., for the State.

STRAUP, C. J.

The defendant was informed against by two counts in the information. In the first it is charged that he unlawfully, willfully, feloniously, deliberately, and with malice aforethought, etc., and with the specific intent to take the life of one Regis, made an assault on him "with a certain gun, commonly called a revolver, loaded with gunpowder and leaden bullets" held in the hands of the defendant, and unlawfully, willfully, feloniously, deliberately, and with malice aforethought, discharged it and shot "upon and against the body" of Regis, inflicting on him "a grievous wound." In the second count it is charged that the defendant "willfully, unlawfully, and feloniously, with intent to do bodily harm to" Regis, "and without just cause or excuse, and without any considerable provocation, did make an assault in and upon the person of said Regis with a deadly weapon commonly called a revolver, loaded with gunpowder and leaden bullets, which the said defendant then and there had and held in his hand, and aimed said weapon at and fired upon the said Regis." The case was submitted to the jury on both counts, and upon the included offenses, battery and simple assault. The jury found him "guilty of the crime of assault with a deadly weapon as charged in the information." Upon that verdict the defendant, over his objection, was sentenced to imprisonment in the state prison for an assault with a deadly weapon, a felony. His contention is that the jury, by their verdict, found him guilty only of an assault, a misdemeanor, and that the court therefore could not lawfully have sentenced him for any higher offense. The point made in such respect is that since the offense of simple assault was included in both counts, and the offense of an assault with a deadly weapon stated in the second and included in the first count, the jury, to convict the defendant of an

1, 2

assault with a deadly weapon, was required to state in their verdict all the essentials constituting that offense; that this was not done, because it was not expressly stated in the verdict that the assault was made "with the intent to do bodily harm"; and, since that was not so stated, the defendant was found guilty of but an assault.

An "assault," as defined by the statute (Comp. Laws 1907, section 4190), "is an unlawful attempt, coupled with a present ability to commit a violent injury on the person of another"; an "assault with a deadly weapon" (section 4195), "every person who, with intent to do bodily harm, and without just cause or excuse, or when no considerable provocation appears, or when the circumstances show an abandoned or malignant heart, commits an assault upon the person of another, with a deadly weapon, instrument, or other thing, is punishable by imprisonment in the state prison," etc. True it is that before one may properly be convicted of an offense all the essentials thereof must be found. And, to properly convict the accused of an assault with a deadly weapon, undoubtedly required a finding that the assault was made with a deadly weapon, with the intent to do bodily harm, and without just cause or excuse, etc. A verdict of course, should not be open to doubtful meaning as to the offense of which the accused was found guilty. He, let it be conceded, is entitled to have such doubt, if any there be, resolved in his favor. And if on this verdict it should not be certain as to whether the defendant was found guilty of an assault, or of an assault with a deadly weapon, he is entitled to have the uncertainty resolved in his favor. In ascertaining what the jury intended and found, the language used in the verdict should be given its fair and obvious meaning. The verdict is, guilty of an "assault with a deadly weapon as charged in the information." That is, the defendant unlawfully attempted, coupled with a present ability, and with a deadly weapon, to commit a violent injury "as charged in the information." How was it charged? In the first count, that the defendant unlawfully, willfully, feloniously, deliberately, premeditatedly, with malice aforethought, and with the specific intent to take the life of the person named in the informa-

tion, shot him with a loaded revolver, inflicting on him a
grievous wound; in the second, willfully, unlawfully, felo-
niously, and with the intent to do bodily harm, and without
cause or excuse, etc., made an assault upon him with a loaded
revolver and ''aimed it at'' and ''fired it upon'' him.  With
these specific descriptions in each count, both as to the deadly
weapon and the intent and manner with which it was used
and the assault made, direct reference to which is made by
the verdict, there can be no doubt that the defendant was
found guilty of an assault with a deadly weapon as defined
by the statute, and that the jury by their language neces-
sarily found all the essentials of that offense.  To reach any
other conclusion requires a verdict, in and of itself, and un-
aided by reference to the information, to specifically and ex-
pressly state all the essentials of the offense found.  That
is not required. *State* v. *Jukanovich*, 45 Utah, 372; 146 Pac.
289.  It matters little under which count they so found the
defendant guilty, for both state all the essentials of that of-
fense.  We think there is no uncertainty as to this verdict,
and hence no error was committed by the judgment rendered
on it.

The alleged assault grew out of a controversy between the
defendant and Regis over a strike in Bingham.  The defend-
ant, at that place, was engaged in the butcher business, and
was not in sympathy with the strike.  Regis, who had been
in the employ of a mining company involved in the strike,
was a participant in the strike and was in sympathy with it.
It is unnecessary to go into the particulars of that.  The State
adduced evidence to show that the defendant, on the 6th of
March, 1913, as Regis was passing the defendant's place of
business, called to him, upbraided him, struck him in the face,
hit him on the head with a revolver, and shot him in the neck,
inflicting a serious wound; and that Regis was unarmed and
had done nothing to provoke the assault.  The defense was
self-defense.  To support it, the defendant adduced evidence
to show that the reputation of Regis for peace and quietude
was bad; that, because of defendant's attitude towards the
strike, Regis, on divers occasions prior to the assault, threat-
ened to drive him out of Bingham, to take his life, ''fill him

full of bullets," some of which threats were made in the defendant's presence and others communicated to him. The defendant, fearing injury at the hands of Regis, complained to an officer at Bingham and asked permission to arm himself. The permission was given in writing. On the day of the assault, Regis, meeting the defendant in front of the latter's place of business, then threatened to kill him, grabbed him by the throat, struck him in the face, and reached for a gun in his side coat pocket. The defendant, seeing a part of the gun in the hands of Regis as he was about to draw it, quickly drew him gun and shot Regis. Thus, as to the immediate circumstances of the assault, the record presents an irreconcilable conflict in the evidence.

The court, on the defendant's theory, charged with respect to the law of self-defense. In that connection the court charged:

"You are instructed that 'great bodily harm' means something more than injuries that ordinarily result from a battery inflicted by the hand or fist without a weapon or other instrument calculated to inflict a serious injury."

Complaint is made of this. The language, in view of the evidence, is not apt. It, however, is clear that what was meant by it is, that "great bodily harm," as used in the criminal law, meant something more than a slight **3, 4, 5** or moderate injury, such as ordinarily results from a battery by a mere strike by the hand or fist and from which only slight or moderate injury is likely to be suffered. Many such batteries are only that, and, of course, do not constitute what, in the criminal law, is meant by "great bodily harm or injury." Still, there may be batteries of that character by a powerful man inflicted with such force by his fists and carried to such severity as to produce great bodily harm or injury. Certainly one of but ordinary physical ability pounced upon and beaten by a "big bully," or a powerful ruffian, with his fists, may, under the law of self-defense, resort to such force as is reasonably necessary to protect himself, even to the extent of taking the life of his assailant. Whether, in a given case, the injury inflicted or threatened is the one or the other, whether the injury or harm inflicted or threatened

is great bodily harm or injury, or is only slight or moderate, is, ordinarily, for the jury. *Lambert* v. *State,* 80 Neb. 562; 114 N. W. 775; *Rogers* v. *State,* 60 Ark. 76; 29 S. W. 894; 31 L. R. A. 465; 46 Am. St. Rep. 154. Perhaps the most that may be urged against the charge is that it was not applicable to the evidence on the theory of either party. Neither the State nor the defendant, by evidence or otherwise, claimed that Regis had but struck the defendant, and for that reason the defendant had or had not cause to believe great bodily harm was about to be inflicted upon him. The State claimed, and adduced evidence to support it, that Regis had done nothing to the defendant, nor attempted to do anything whatever, until the defendant, wholly without provocation, began to strike and beat him. The defendant claimed, and adduced evidence to support it, that Regis, a man of bad reputation, on divers occasions had threatened his life, threatened it, at the very time of the assault, and not only grabbed him by the throat and struck him, but also, at the same time, reached for a gun in his side coat pocket, and which the defendant saw he was about to draw, when the defendant, because of all this, drew his gun and shot. So, what the court charged was not applicable to either theory, and was in a sense calling attention to a mere minor thing in evidence to the exclusion of weightier things. Still, we are of the opinion that it was not of such harmful effect as to require a reversal for that reason.

A witness called by the defendant testified that Regis had threatened to take the life of the defendant, that he "would go to Bingham and fill him full of bullets," and that the reputation of Regis for peace and quietude was **6, 7, 8** bad. The witness was cross-examined, dismissed, and recalled for further cross-examination. Then he was asked by the State:

"Q. You remember this man Kakarikos (the defendant) drawing a knife, or pulling a gun on Primpas? A. No, never, Q. You don't know about that? A. No, sir. Q. Weren't you yourself and Kakarikos both engaged in that trouble with Primpas? A. No, sir; it was some other people in the old country. Q. Didn't you yourself go to jail on account of

that? A. No, sir; never. If you show me anybody that put me in jail, I would give a thousand dollars. Q. Do you know Tom Alexandrus? A. Yes. Q. Did you ever know of Kakarikos having any trouble with Tom Alexandrus? A. No, sir.''

Of course, the testimony was incompetent. The witness had testified to nothing, either on direct or cross-examination, to render such inquiries pertinent. Certainly, it ought to be conceded that the testimony of the witness on direct examination as to the bad reputation of Regis and the threats made by him gave the prosecution no license, on cross-examination, to inquire of the witness if he did not also know something bad of the defendant, pulling guns and knives on others. But there was no objection to this on the part of the defendant. He, however, requested the court to charge:

''Certain questions were asked some of the witnesses relative to the defendant drawing a gun, and drawing a knife on other persons previous to the 6th of March, 1913. You are instructed that there is absolutely no evidence of any such an occurrence, and you are not to infer by reason of such questions having been asked that any such occurrence or transaction took place.''

Complaint is made of the court's refusal to give it. True, as stated in the request, there was no evidence ''of any such occurrences.'' Though the questions propounded were answered in the negative and in favor of the defendant, still, fearful that the jury, from the mere asking of the questions, might be influenced to draw inferences that the defendant, might have been guilty of such acts, the defendant, as is apparent, asked the request to prevent the jury drawing any such inference. The subject-matter inquired into by the State being, on the record, itself, incompetent and not pertinent, the court, under the circumstances, could properly have given the request. On the other hand, the defendant, apparently willing that his conduct in such particulars be inquired into, permitted the inquiry without objection. Because of that, let it be assumed, he was not entitled to have the testimony stricken; and, as it was in his favor, he did not perhaps wish it stricken. Still, if the character of the in-

quiry, and the testimony adduced concerning it, were such as reasonably calculated to influence the lay mind to draw improper inferences from it, or to make an unauthorized use of it, the defendant nevertheless was entitled to a charge warning the jury against such improper inferences or use. That would be true whether the testimony was competent or incompetent, or whether it came in with or without objections; for in neither case would the jury be entitled to draw improper inferences from testimony, or to make an unauthorized use of it, to point to it as proof of something which the law would not permit. To the professional mind the inquiries and testimony prove nothing. How to the lay mind? It may be assumed many improper matters offered but not admitted, or admitted but answered favorably to him against whom offered, have, ordinarily, no prejudicial influence. Still, instances may be supposed where the matter or the manner of inquiry is such as to prejudicially influence, unless the jury be warned, and some, notwithstanding a warning. We think the inquiries and testimony here were not of the character that not to give the request constituted prejudicial error. True, the first question propounded assumed that the defendant had in fact drawn a gun or knife on Primpas, and but reminded the witness if he did not "remember" it, did not "know about" it; and, upon his answering in the negative, further inquiry was made in a way to discredit him, if he and the defendant had not both "engaged in that trouble," and if he did not "go to jail on account of" it. While all that was improper, yet it could have been taken care of on proper and timely objections had they been made. And then it is hard to believe that, from the questions propounded and the negative answers, the jury nevertheless were induced to believe that the defendant might have been guilty of such acts and the witness have no knowledge of it, or, induced to so believe, by disbelieving the witness or discrediting his testimony. We think it not likely that the average juror would so consider it, and therefore no harm was done by the ruling.

Complaint is also made of misconduct on the part of the assistant district attorney in his closing argument to the jury. This is one of the principal assignments re-

lied on and discussed in appellant's brief.    The
State called, as a witness in its behalf, the officer
who had arrested the defendant, twenty or thirty minutes
after the assault for which the defendant was tried had been
committed.   He met the defendant coming down the canyon
at Bingham on his way to the police station to surrender
himself.   The officer testified that he then asked him where
his gun was with which he did the shooting, and that he re-
plied that he "threw it through the door in his shop."   The
witness was then asked if he later made a search of the shop
for the gun.   He answered that he had, about thirty minutes
later, but did not find it.    Then he was asked by the assist-
ant district attorney:

"Q. Did you, at any later date, secure possession of any
weapon of the defendant?    A. Yes, sir.    Q. How long was it
after the shooting?    A. Why, it was the 4th or 5th of Apri .
the beginning of April.    (The alleged assault was committed
the 6th of March.)    Q. What were the circumstances under
which you secured possession of this weapon?    A. I had a
warrant for his arrest for threatening to kill.    Q. Some other
case?    A. Some other case.    Q. Go ahead.    Did you make
a search of him at that time?    A. Yes, sir."

Counsel for defendant, finally awaking to the situation, ob-
jected to this "as irrelevant and immaterial," and inquired:

"What is the purpose of this?    The Assistant District At-
torney: We are going to identify this weapon.    (After some
colloquy between counsel and the court) Counsel for Defend-
ant: I object to that way of proving it.    I don't think this
evidence is competent.    The Court: This would not be com-
petent unless it can be connected.    There must be sufficient to
submit to the jury for them to pass on.    Counsel for the De-
fendant: We will admit that is the gun with which the shoot-
ing took place, and that it was" the defendant's gun.    The
assistant district attorney then further inquired of the witness:
"Q. At the time you secured possession of this gun of the de-
fendant, did you have any conversation with him relative to
what he had done with the gun after the shooting?"   Here,
further objections and colloquies followed.    The witness an-
swered:    "A. Not at that time," and that he then only

"asked him if that is the gun he done the shooting with," and that the defendant "admitted that it was."

Now, in his closing argument, the assistant district attorney argued that the defendant had also been arrested for an offense other than that for which he was on trial. Thereupon counsel for defendant objected, and, calling the reporter, stated:

"I wish the record to show that counsel in his closing argument states to the jury that the defendant was arrested after the charge upon which he is being tried, arrested for an assault of some kind, and that a gun was taken from him at that time by Sorenson," the officer. "Counsel excepts to the remark before the jury. There is no evidence before the jury upon which to base it and it is wholly false, and requests the court at this time to instruct the jury to disregard any such statement. The Assistant District Attorney: I would ask, so that the recollection may be clear upon it, may be no question, I would ask that the stenographer turn to the testimony of Mr. Sorenson, his direct examination, and see just what the testimony was that is still in the record there."

Thereupon the stenographer read from his notes the testimony of the officer that about a month after the alleged assault he "had a warrant for his arrest for threatening to kill. Q. Some other case? A. Some other case." At the conclusion of that, counsel for defendant:

"Was there any evidence there that he was arrested? The Assistant District Attorney: My switching, criss-crossing friend— Counsel for Defendant: I ask the court for an instruction that there is no evidence before this jury of any other arrest; no evidence that the gun was taken from his person. The Court: I think it is a question of fact that the court will not interfere with; the jury may judge from the evidence under the usual instructions as to reasonable inferences as well as express statements. Counsel for Defendant: Your honor will save me an exception? The Court: Yes, you may have an exception. The Assistant District Attorney (addressing counsel for defendant): Have you finished? Counsel for Defendant: I have made my record. The Assistant

District Attorney (resuming his argument to the jury): So, gentlemen, as I was saying, at the time my distinguished friend interrupted me with his usual accuracy, that Regis, it is not shown from the evidence, was ever gone after by any officer either before or after this incident, who had a warrant for his arrest for an assault with a deadly weapon or any other kind of violent assault. Counsel for Defendant: I except to that statement because there is no evidence what the warrant was for. The Assistant District Attorney: You don't hear well, do you? Counsel for Defendant: Yes, I hear well and understand perfectly."

There the incident closed, the assistant district attorney resuming and concluding his argument without further ruling from the court. Complaint is made that the district attorney, under the claim "to identify the weapon," was permitted to show that the officer, about a month after the defendant's arrest for the offense for which he was tried, "had a warrant for his arrest for threatening to kill, in some other case," and then, over the defendant's objections, was permitted to argue that the defendant was arrested for some other offense, "threatening to kill" with a deadly weapon, which was then taken from him, and to compare the conduct of the defendant in such respect with that of Regis. We, on the record, are asked to hold this was justified, or, at most, was not prejudicial. We can do neither.

Of course, it was proper to identify the weapon with which the defendant did the shooting, to show what he thereafter did with it, and, in that connection, what, if anything, was stated or admitted by him concerning all such matters. But that readily could have been shown without the unnecessary circumlocution, "What were the circumstances under which you secured possession of this weapon?" and the irresponsive and harmful answer of the officer: "I had a warrant for his arrest for threatening to kill. Q. Some other case? A. Some other case." Upon inquiry as to the "purpose of this" and of the further question, "Did you make a search of him at that time?" the assistant district attorney replied, "To identify the weapon." The State urges the argument to the jury was justifiable because that testimony came in without

timely objections; and, notwithstanding, it was elicited under the claim to identify the weapon, nevertheless, being in, the district attorney had the right as is contended, to argue anything deducible from it, even to the extent that the defendant a month after the commission of the charged offense had been arrested for another offense, "threatening to kill," with a deadly weapon, and the weapon then taken from him. We think the argument improper, because the extent to which it was carried was not even justified by the testimony of the officer, and further and chiefly, because, under the circumstances disclosed, an improper use was permitted to be made of the testimony, which, as has been seen, was elicited upon a permissible claim, to identify the weapon, and then permitted to be used for an incompetent and improper purpose, to show an arrest of the defendant for another offense. Where evidence has been received, though competent and admitted for one purpose, but incompetent for another, the court would not permit even a jury to use it for such other and incompetent purpose. Much less ought it to permit the district attorney to so use it. Though that testimony came in without timely objections, yet, when it was made apparent that it was elicited for one purpose and argued for another and improper purpose, the court promptly should have sustained the defendant's objection to such use made of it, and, on the defendant's request, erred in not requiring the district attorney to retract the statements and to desist from further argument of such matter, in not instructing the jury to disregard the statements, and in not warning them that the testimony of the officer in such particular could be considered only on the question of identity of the weapon, and as stated by the assistant district attorney at the time it was received, and that they could not consider it for the purpose of showing that the defendant had been arrested for, or was guilty of, some other offense. And in view of the argument thus made, the court well could have gone further and have stated that the testimony of the officer, that he had a warrant for the defendant's arrest for threatening to kill in some other case, had no tendency to prove what was claimed for it, identity of the weapon; and, as the defendant had unequivo-

cally admitted that the weapon sought to be identified was the weapon with which he did the shooting and that it was his weapon, could have directed the jury to wholly disregard that portion of the officer's testimony.

We think the ruling wrong and prejudicial. 12 Cyc. 574, and cases there cited; *People* v. *Valliere,* 127 Cal. 65; 59 Pac. 295; *People* v. *Smith,* 121 Cal. 355; 53 Pac. 802; *State* v. *Welch,* 22 Mont. 92; 55 Pac. 927; *State* v. *Helm,* 92 Iowa 540; 61 N. W. 246; *Magnuson* v. *State,* 13 Ind. App. 303; 41 N. E. 545; *Baughman* v. *State,* 49 Tex. Cr. R. 33; 90 S. W. 166; *Miles* v. *State* (Tex. Cr. App.) 65 S. W. 912; *Johnson* v. *State,* 46 Tex. Cr. R. 291; 81 S. W. 945.

For this reason the judgment must be reversed and the case remanded for a new trial. Such is the order.

Having reached that conclusion, we deem it proper to call attention to what we think is error in the charge with respect to another matter of considerable moment. As no exception was taken to it and no assignment or **12, 13, 14** complaint made of it, the charge, in such respect, would be passed unnoticed, were the case not reversed on other grounds. Since, however, the case is to be remanded for a new trial, and since the exact point has been passed on by us in prior cases and the rule firmly established in this jurisdiction, we deem it proper to call attention to it, for, unless we do, a new trial may result in a commission of the same error. In the cases of *State* v. *Vacos,* 40 Utah 169; 120 Pac. 497; *State* v. *White,* 40 Utah 342; 121 Pac. 579; and *State* v. *Dewey,* 41 Utah 538; 127 Pac. 275, the rule is clearly announced and established that in a criminal case, upon a claim and proof of self-defense, the defendant, to prevail, is not required to establish the claim by a preponderance, or greater weight, of the evidence, but is entitled to an acquittal, if, on the whole evidence, the jury entertain a reasonable doubt as to whether he acted in self-defense or not. We think the charge not in harmony with that. The court, after stating to the jury the essential averments of both counts in the information, and defining the offense stated in each, as well as all included offenses, instructed the jury that the plea of not guilty put in issue "every material allegation of the in-

formation and puts upon the State the burden of proving every essential fact constituting the crime so charged to your satisfaction beyond a reasonable doubt.'' Then, after charging as to self-defense, the court charged:

''You are instructed that, under the instructions of the court and the evidence given in the case, if you find that the defendant was justified in assaulting the witness Regis, then your verdict must be not guilty.''

And, in that connection, further charged:

''You are instructed that if you believe from the evidence that the defendant with a pistol willfully shot Regis, as charged in the information, then, before such act can be justified on the ground of self-defense, it must appear to the reasonable satisfaction of the jury from the whole of the evidence that the defendant at the time of shooting had reasonable cause to believe, and did believe, that Regis was then about to kill the defendant, or do him great bodily harm, and that the defendant had reasonable cause to believe, and did believe, that there was immediate danger of such design on the part of Regis being accomplished, and that the defendant did in fact shoot Regis for the purpose of preventing the harm so apprehended.''

The charge that, ''if you find the defendant was justified in assaulting the witness Regis, then your verdict must be not guilty,'' does not fairly imply that they may find him not guilty, if they, upon all the evidence, have but a reasonable doubt as to whether he was or was not justified. Charging that if they believed that the defendant ''willfully shot Regis,'' as charged in the information, ''then, before such act can be justified on the ground of self-defense, it must appear to the reasonable satisfaction of the jury, from the whole of the evidence, that the defendant'' was justified, stating the particulars constituting justification, required the jury, if they would acquit on the issue of self-defense, to reach the conclusion, upon the whole evidence, to their ''reasonable satisfaction,'' that the defendant was justified. That is but equivalent to the thought theretofore expressed that, to so acquit, the jury, upon the whole evidence, were required to find that the defendant was justified, and is not equivalent

Douglas et al. v. Dist. Court of Salt Lake County et al., 45 Utah 486.

to a charge that he was entitled to an acquittal if, upon the whole evidence, the jury entertained but a reasonable doubt as to whether he was or was not justified. *People* v. *Downs,* 123 N. Y. 558; 25 N. E. 988. That the charge is not in harmony with the established rule in this jurisdiction is, we think, not open to serious controversy. Nowhere in the charge was that rule given the jury.

FRICK and McCARTY, JJ., concur.