Eddie PAGE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1132.

Court of Appeals of Alaska.

Sept. 26, 1986.

5. Thies filed suit in 1979 and the defendants first moved to join her as a third-party defendant in 1983.

Carol Greenberg, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

W.H. Hawley, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, Chief Judge, and COATS and SINGLETON, Judges.

## OPINION

COATS, Judge.

On July 24, 1985, Safeway store security officer Richard R. Saffell observed Eddie Page in the Bentley Mall Safeway Store in Fairbanks. Saffell saw Page, accompanied by a female, filling a shopping cart full of meat. On the lower tier of the cart was a cardboard box. When the cart was full, Page and the female wheeled it down an aisle which displayed dog food. Page filled the cardboard box with the meat, then stashed the box among the dog food.

Page was then observed refilling the shopping cart with seafood. He eventually returned to the cardboard box and put the seafood in the box with the meat, although he was not observed doing so by Saffell.

Page then somehow wheeled the box, in the cart, past the check stands, parking it in front of the Safeway liquor store. He made a telephone call, then was approached by Saffell's supervisor, Don Kramer, who instigated the detention of Page for suspected shoplifting.

After Page was detained, the prices of the meat and seafood were added by grocery checker Marie Burk. She added the meat prices manually and used the new "scanner" system on the seafood. She testified at trial that she exercised "particular care" in adding the prices. She conceded, however, that it was possible to make mistakes. It took her just six minutes to total the prices; the total was $648.60. The meat and seafood were placed in shopping bags.

Don Kramer testified that he compared Burk's adding machine tape against the price labels on the meat and seafood. He testified that the tape was accurate both in terms of the number of items and the prices. Kramer then took the meat to the

cooler and had photographs taken of the meat. However, the photographs did not show all of the items, and the price labels could not be read in the photographs. The items were then returned to the store shelves for resale.

Kramer testified that he contacted the Fairbanks Police and that the police took Page into custody. However, it is not clear whether the police arrived before the items, which were allegedly stolen, were returned to the shelves. The shopping bags and box were thrown away.

## A. PRESERVATION OF EVIDENCE

Page moved for a dismissal before trial, claiming that he was denied due process. Page's motion was based on the state's failure to preserve the bags, the box, and the items that Page allegedly stole. Page claims that, had the evidence been preserved, it might have been exculpatory. He argues it could have been examined for fingerprints or that preservation of the items could have been useful in challenging the value of the merchandise.

Page cites *Hatfield v. State*, 663 P.2d 987 (Alaska App.1983), in support of his due process claim. In *Hatfield*, the defendants were charged with theft in the second degree for the theft of copper allegedly worth over $500. Before trial, the defendants moved to dismiss the case because the state had failed to preserve the copper. *Id.* at 988. In *Hatfield*, the police obtained the stolen copper and photographed it, however, they did not weigh the copper. Following the police investigation, the owners of the copper sold it. *Id.* at 988–89. The trial court denied the defendant's motion to dismiss. *Id.* at 989.

On appeal, we pointed to actual testimony in the trial record, which cast doubt on the fact that the value of the copper was over $500. We concluded that "[t]he record as a whole leaves open the distinct possibility that, had they been given the opportunity to sort and value the stolen copper according to weight and grade, the defendants might have been able to raise a reasonable doubt that its worth was over $500." *Id.* at 991. We therefore reversed the conviction for theft in the second degree and ordered the trial court to enter convictions of theft in the third degree, which required thefts of $50 or more. *Id.*

The supreme court has stated, however, that:

> [N]ot every failure to preserve evidence violates one's constitutional right to due process. Rather, the unavailability of evidence violates due process only if the evidence "might have led the jury to entertain a reasonable doubt about the defendant's guilt."

*Williams v. State*, 629 P.2d 54, 64 (Alaska 1981) (quoting *Wyrick v. State*, 590 P.2d 46, 46 n. 1 (Alaska 1979)).

In Page's case there is simply no indication that the evidence, if preserved, "might have led the jury to entertain a reasonable doubt about the defendant's guilt." The trial record establishes that the grocery checker, who added the items, took care in adding the prices and preparing a grocery tape which listed all of the prices. Don Kramer then checked the adding machine tape against the labels.[1] The meat was then photographed. Unlike the copper in *Hatfield*, the fact that the items were marked for sale at a particular price was strong evidence of value.[2] Furthermore,

---

**1.** As the state points out, there is no indication that the state ever had the opportunity to preserve the evidence in this case since the record is unclear whether the police arrived before the meat was returned to the shelves for resale. Since it appears this issue was not addressed in the trial court, we assume for purposes of this opinion that the meat had not been returned to the shelves before the police arrived to take Page into custody.

**2.** Alaska Statute 11.46.980 provides:

*Determination of value; aggregation of amounts.*
(a) In this chapter, whenever it is necessary to determine the value of property, that value is the market value of the property at the time and place of the crime unless otherwise specified or, if the market value cannot reasonably be ascertained, the cost of replacement of the property within a reasonable time after the crime.

In addition, Alaska Pattern Jury Instructions (Criminal) § 46.980(a) (1980) provides:

there are obvious difficulties in trying to preserve perishable evidence such as meat and seafood.

■ In addition, there is no indication that any fingerprint evidence might have been exculpatory. If Page's fingerprints were not on any of the items, this would have been of little or no exculpatory value given the eyewitness testimony. Page's fingerprints, had they initially been present, could also have been obliterated by the large number of people who handled the evidence. We conclude that the trial court did not err in refusing to sanction the state for failure to preserve evidence.

### B. ALASKA STATUTE 12.80.050

Page contends that the photographs of the meat should not have been admitted into evidence. Alaska Statute 12.80.050 provides:

*Photographic evidence of property wrongfully taken or damaged.* (a) In a criminal proceeding or a children's court proceeding involving the wrongful taking or damaging of property, photographs of the property are competent evidence of the property and are admissible in the proceeding to the same extent as if the property had been introduced as evidence.

(b) Photographs of property that are to be introduced as evidence under this section shall be accompanied by a written description of the property, the name of the owner of the property, the location where the alleged crime occurred, the name of the investigating police officer, the date the photograph was taken, and the name and signature of the photographer. The written description shall be signed by the investigating peace officer under penalty of perjury under AS 09.-63.020.

■ This statute appears to be designed to allow photographs to be taken of property so that the photographs can be admitted into evidence "to the same extent as if the property had been admitted into evidence." *See Hatfield,* 663 P.2d at 990 n. 5. However, completely apart from the statute, it was proper to admit the photographs to illustrate the testimony of the witnesses. *See* A.R.E. 901. We also fail to see how any failure to comply with the statute would have prejudiced Page. In the absence of prejudice to Page, we do not believe that application of an exclusionary rule, based upon the state's failure to comply with AS 12.80.050, is warranted. We find no error in the admission of the photographs.

### C. PRIOR CONVICTIONS

Before trial, the state asked the trial court to rule that a conviction for a prior incident would be admissible under Evidence Rule 404(b).[3] The state made the following offer of proof in a pretrial memorandum:

On January 27, 1982, Michael Lund, the manager of the Market Basket No. 1 related that [at] approximately 6:00 p.m. a white male adult who was later identified as Eddie Page was observed to enter the Market Basket No. 1, obtain a cart,

DETERMINATION OF VALUE—PROPERTY

The value of property, unless otherwise specified, ... is the market value of the property at the time and place of the crime. If the market value cannot be reasonably ascertained, it is the cost of replacement of the property within a reasonable time after the crime.

Market value is the highest price, estimated in terms of money, for which the property would have sold in the open market at the time and in that locality, if the owner was desirous of selling, but under no urgent necessity of doing so, if the buyer was desirous of buying but under no urgent necessity of doing so, if the seller had a reasonable time within which to find a purchaser, and if the buyer had knowledge of the character of the property and of the uses to which it might be put.

3. Alaska Rule of Evidence 404(b) provides:

(b) *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

and proceed to the produce department where he placed a large empty egg cardboard box in the basket. A while later Lund observed Page in the soup aisle acting suspiciously with the box. Lund observed Page wheel the box-laden cart around the check stand and exit the store toward the east side of the parking lot without paying for any merchandise. Since Lund was suspicious that the box was full of unpaid for groceries, he followed Page out of the store. Lund and another employee stopped Page on the east side of the Market Basket parking lot. Lund grabbed Page and a struggle ensued. When Page was almost subdued, he feigned a heart attack causing Lund and the other employee to release their hold on him. Page pulled out a buck-type knife and pointed it at Lund and threatened him. Page was able to escape leaving the groceries in the parking lot. The groceries were itemized in the cardboard box and consisted of $459.68 of Market Basket No. 1 packaged meat and lobster tails with a few sundry grocery items.

Page was subsequently identified by Lund and other witnesses from a photographic lineup and was charged with Assault in the Third Degree and Theft in the Third Degree. He was convicted by a jury following a two-day trial in May of 1982.

Judge Taylor denied the state's motion. At the close of the state's case, Page announced, through his attorney, that he would take the stand. The state indicated that, if Page took the stand and denied intent, the state would attempt to admit the facts of the prior conviction under Evidence Rule 404(b). Judge Taylor indicated that his first ruling merely excluded the facts of the prior conviction during the state's case-in-chief. Judge Taylor indicated that the facts of the prior conviction "could be en-

tirely valid for purposes of cross-examination of the defendant." Defense counsel then indicated that, because of the ruling, he would not call Page to testify.[4]

On appeal, Page claims that the trial judge's ruling was erroneous and that the ruling prevented him from testifying. In replying to Page's argument, the state urges us to adopt the reasoning of *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). In *Luce,* the supreme court held that to raise and preserve for review the claim of improper impeachment with a prior conviction, the defendant must testify. The court reasoned that, where the defendant does not testify, the reviewing court does not know whether the defendant would have actually testified had he received a favorable ruling or whether the prosecution would actually have chosen to use the prior conviction for impeachment. In addition, the court concluded that where the defendant does not testify, it is difficult for the trial court to balance the probative value of the evidence with its potential for prejudice. 469 U.S. at ——, 105 S.Ct. at 463, 83 L.Ed.2d at 447. Finally, it is difficult for an appellate court to review the trial court's ruling and probably impossible for an appellate court to evaluate the question of harmless error. 469 U.S. at ——, 105 S.Ct. at 464, 83 L.Ed.2d at 448.

■ We agree with the state that the reasoning of *Luce* should apply where the record is as limited as it is in this case. The record in the present case is simply inadequate for us to meaningfully review the trial court's decision. There is no way for us to know for sure if Page would have testified or how he would have testified. It is impossible to know to what extent the facts of his prior conviction would have been relevant and to what extent they would have been prejudicial.[5] We cannot

---

**4.** Page made no offer of proof regarding what his testimony might have been. This fact further supports our resolution of this issue. Trial courts cannot be expected to rule in a vacuum.

**5.** Admission of evidence of prior bad acts or convictions involves a balancing process by the

trial judge in light of the facts of the case. In *Lerchenstein v. State,* 697 P.2d 312, 315 (Alaska App.1985), *petition for hearing granted* (Alaska, June 25, 1985), we stated:

First, the court must determine that the evidence sought to be admitted has relevance

determine whether the prosecutor would have actually attempted to have the prior conviction admitted into evidence nor can we determine what the trial judge's ultimate ruling would have been in light of Page's testimony. Additionally, we cannot determine whether the details of Page's prior conviction might have been admitted. Under these circumstances, we cannot find that the trial court abused its discretion.

The conviction is AFFIRMED.

apart from propensity. Second, the court must determine that the nonpropensity relevance outweighs the presumed highly prejudicial impact of the evidence. If there is no genuine nonpropensity relevance, the balancing step is never reached. [Citations omitted.]