STATE of Utah, Plaintiff and Respondent,

v.

Delmont L. GENTRY, Defendant and Appellant.

No. 20185.

Supreme Court of Utah.

Dec. 1, 1987.

Glenn K. Iwasaki, Suzan Pixton, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Earl F. Dorius, Sandra S. Sjogren, Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

Defendant Delmont L. Gentry was convicted of aggravated sexual assault and was sentenced to a minimum mandatory term of ten years. Defendant challenges the constitutionality of the minimum mandatory sentence provided for by Utah Code Ann. § 76–5–405 (Supp.1987). Defendant also claims that the trial court erred when it (1) failed to arrest judgment upon discovering that the verdict form signed by the jury foreman did not state the crime charged in the information; (2) refused to permit defendant to testify regarding prior sexual activity with the victim without being impeached by prior felony convictions; and (3) failed to allow hearsay testimony of defendant's ex-girlfriend, an unavailable witness. Finally, defendant claims that the evidence was insufficient in light of discrepancies in the victim's testimony. We reverse and remand for a new trial.

At about 11:00 a.m. on May 23, 1984, the victim, then aged 16, stood near the intersection of 900 South and State Street in Salt Lake City and began to hitchhike to her home on 4500 South.

The victim related the following course of events when she testified at trial: A man, later identified as defendant, pulled up to the curb in a pickup truck with a white camper shell and offered her a ride,

which she accepted. At some point, he asked her if she wanted to make some money. She testified that she understood that to mean that he wanted her to "make love to him" and she refused. Defendant told the victim that he needed to go to the bathroom and turned west off State Street and pulled into a warehouse area. Defendant got out of the truck to urinate. When he climbed back into the truck, his pants were unzipped and his belt was undone. Defendant then drew a short knife and demanded oral sex. The victim sodomized defendant as he held the knife at her neck. Defendant then ordered the victim out of the truck. As defendant drove away, the victim wrote down the license plate number of the truck. She then walked to a nearby phone booth and called the police.

Officer Poulsen, the investigating officer, testified that when he arrived, the victim was upset, emotionally withdrawn, and unable to talk in complete sentences. The victim identified her assailant's features, including a tattoo on his hand, and described the truck to the police officer. At the police station, she picked defendant's picture from a photo array.

The victim's testimony at trial frequently conflicted with evidence offered by defendant. The victim described the truck that picked her up as red with a white stripe. Defendant introduced photographs that showed his truck had a white exterior and a red interior. The victim told Officer Poulsen that her assailant had reddish-blonde hair. At trial, the victim testified that her assailant had dark brown hair with a red tint, defendant's hair color. There was also conflicting testimony regarding jewelry customarily worn by defendant, the type of belt buckle worn by defendant, the presence of a cowboy hat on the front seat of the truck, the layout of the truck's interior, the time she left home and arrived downtown on May 23, and whether the knife actually touched her neck during the assault.

Defendant was convicted of aggravated sexual assault, in violation of Utah Code Ann. § 76–5–405 (Supp.1987). After considering mitigating and aggravating circumstances, the trial court sentenced defendant to a minimum mandatory term of ten years in prison.

## I.

■ Defendant challenges the constitutionality of the minimum mandatory sentencing scheme under which he was sentenced. Defendant argues that it constitutes cruel and unusual punishment, is an unconstitutional infringement on inherent judicial power and authority, invades the protected province of the Board of Pardons, and is unconstitutionally vague. The first three arguments raised by defendant were resolved by our holding in *State v. Bishop*, 717 P.2d 261 (Utah 1986), in the context of Utah's child sodomy statute. Utah Code Ann. § 76–5–403.1 (Supp.1987). We upheld the minimum mandatory sentencing scheme against challenges based upon equal protection, cruel and unusual punishment, and separation of powers. We find the analysis in that case equally applicable to the aggravated sexual assault statute charged in this case and therefore do not treat those arguments further. In *State v. Egbert*, 748 P.2d 558 (Utah 1987), we analyzed the minimum mandatory sentencing scheme for vagueness and held it constitutional. Defendant's challenges to the statute are therefore without merit.

## II.

■ The next issue is whether the trial court erred in refusing to grant defendant's motion to arrest judgment because the verdict form signed by the jury foreman did not state the crime charged in the information. The jury verdict form returned by the jury stated that defendant was guilty of "forcible sexual assault as charged in the information." In fact, the information charged defendant with *aggravated* sexual assault, in violation of Utah Code Ann. § 76–5–405 (Supp.1987). Utah statutes do not contain a crime defined as "forcible sexual assault," although Utah Code Ann. § 76–5–404 (Supp.1987) prohibits "forcible sexual *abuse*," a second degree felony. (Emphasis added.) Neither

the judge nor counsel realized the error until the verdict was read in open court. Defendant's motion to arrest judgment was denied.

Under Utah Code Ann. § 77–35–23 (1982), the court may arrest judgment "if the facts proved or admitted do not constitute a public offense ... or there is other good cause for the arrest of judgment." Defendant argues that this statute applies to situations where the offense on the verdict form does not constitute a public offense. According to defendant, this situation creates uncertainty per se as to what the jury intended, and he is entitled to have such uncertainty resolved in his favor. *State v. Kakarikos*, 45 Utah 470, 474, 146 P. 750, 752 (1915). We reject the argument that an error on the jury verdict form creates uncertainty per se. In evaluating whether there is uncertainty as to what the jury intended, we will look at the totality of the circumstances.

We do not believe that there was uncertainty as to what the jury intended in arriving at a verdict in this case. It is clear that the facts proved or admitted constituted aggravated sexual assault, a public offense under Utah Code Ann. § 76–5–405 (Supp. 1987). There was no indication that the jury was confused about a lesser crime since no lesser included offense instructions were given or requested. *See, e.g., State v. Jukanovich*, 45 Utah 372, 146 P. 289 (1915). Nor is this the type of case where the jury returned a verdict which created uncertainty as to which of multiple defendants were guilty. *See, e.g., Branningan v. People*, 3 Utah 488, 24 P. 767 (1869). The jury was faced with an all-or-nothing proposition—it could either find defendant guilty as charged or it could find him not guilty. The information charged only the crime of aggravated sexual assault, the instructions to the jury laid out the elements of the crime and defined the key terms, and all of the arguments presented by the prosecution and defense concerned only the crime of aggravated sexual assault. Under these circumstances, we do not think the jury verdict created uncertainty as to what the jury intended.

A jury verdict should only be set aside if the jury misunderstands the law or ignores the evidence. *See State v. Brown*, 36 Utah 46, 57, 102 P. 641, 646 (1909). This appears to be a simple case of a clerical error where the word "forcible" was typed instead of the word "aggravated." The jury foreman did not consider alternative crimes before signing the verdict form. Because the crime charged was so clearly stated and tried and because no lesser included offenses were presented to the jury, we do not think the jury was confused by the miswording on the verdict form.

### III.

Defendant raises several evidentiary issues. In reviewing these issues, we grant broad discretion to the trial court. In general, this Court will not reverse the trial court's ruling on evidentiary issues unless it is manifest that the court so abused its discretion that there is a likelihood that injustice resulted. *State v. McClain*, 706 P.2d 603, 604 (Utah 1985).

Defendant challenges the trial court's rulings regarding evidence proffered by defendant which would show that the victim had engaged in sexual relations with defendant on prior occasions. According to defendant, the victim is a prostitute he met at Burningham's Truck Stop, and she was motivated to lie because he refused to pay for sexual services she had provided earlier. Among other evidentiary challenges, defendant questions the court's denial of defendant's motion to suppress evidence of his prior convictions. Defendant also challenges the trial court's refusal to permit Sharon Knerr to testify regarding hearsay statements of an unavailable witness. Finally, defendant contends that the evidence was insufficient to support the jury verdict. We agree with defendant's challenge to the refusal to exclude prior convictions. We treat defendant's other evidentiary challenges in order to aid the trial court on remand.

Defendant did not take the stand. Hoping to avoid impeachment, he moved to suppress evidence of his prior convictions. That motion was denied, and defendant

chose not to testify. In *State v. Banner*, 717 P.2d 1325 (Utah 1986), we held in a similar circumstance that we should reach the claimed error.

> Inasmuch as this is the first time this Court has spoken out on the requirements surrounding preservation of objections to rulings on Rule 609 motions, and since the issue was preserved under many of the federal cases in effect at trial, *Luce* [*v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984),] not having been decided until five days after trial, we reach the claimed error in this case.

*Id.* at 1331.

■ The defendant herein was also tried before the decision in *Luce*, and considerations of fairness require that he be afforded the same treatment given the defendant in *Banner*. We are persuaded, however, that the rationale and holding of the *Luce* decision are proper and therefore announce, for the guidance of trial courts, defendants, and defense counsel, the following rule: To preserve for appellate review a claim of improper impeachment with a prior conviction, a defendant must testify. This rule will apply prospectively in all cases tried after the date of this opinion. We agree with the United States Supreme Court that

> [r]equiring that a defendant testify in order to preserve Rule 609(a) claims, will enable the reviewing court to determine the impact any erroneous impeachment may have had in light of the record as a whole; it will also tend to discourage making such motions solely to "plant" reversible error in the event of conviction.

*Luce*, 469 U.S. at 42, 105 S.Ct. at 464.

■ Reaching the merits of defendant's claim, we reject his argument that he was placed in an "unfair" position since he was "forced" to choose between taking the stand to tell his story and being impeached by prior convictions. Defendant fails to cite any authorities in his behalf, but it appears he claims that the trial court, by refusing to grant the motion to suppress prior convictions, has penalized him for ex-

ercising his constitutional right to testify. This argument was rejected in *State v. McCumber*, 622 P.2d 353 (Utah 1980). There, we said:

> Defendant misconstrues the nature of the constitutional right in question. The Constitution affords an accused a choice: He may refuse to become a witness, or he may elect to take the witness stand and testify in his own behalf.... The defendant having exercised his constitutional right to remain silent and not testify, he cannot now be heard to complain that the court forced the choice upon him and thereby denied him due process.

*Id.* at 358.

The State argues that Utah Rule of Evidence 609 and Utah Code Ann. § 78-24-9 (1987) have codified a "well-settled" rule that a defendant must answer for his felony convictions if he chooses to be a witness. Rule 609(a) provides:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

In *State v. Banner*, 717 P.2d 1325 (Utah 1986), we explained that an accused who takes the stand in his own behalf can be impeached by felonies not involving dishonesty or false statement "*only if* 'the court determines that the probative value of admitting the evidence outweighs its prejudicial effect.'" *Id.* at 1334 (citing 32B Am. Jur.2d *Federal Rules of Evidence* § 419 (1982 & Supp.1985)). It is therefore an abuse of the lower court's discretion to allow impeachment by evidence of prior convictions if their prejudicial effect outweighs their probative value. The prosecution has the burden under rule 609(a) of persuading the trial court that the prior

convictions should not be suppressed under this standard. *Id.*

*Banner* involved a factually similar case in which the defendant, who was charged with child sexual abuse and sodomy on a child, chose not to testify after the trial court denied a motion in limine to exclude evidence of prior convictions. To prevent the State from impeaching his testimony if he chose to take the stand, the defendant sought to exclude eight- and nine-year-old felony convictions for assault with intent to commit rape. This Court ruled that the trial court abused its discretion in failing to exclude the defendant's previous felony convictions since their prejudicial effect was outweighed by their probative value. We identified five factors to be considered when balancing probative value against prejudicial effect under rule 609(a)(1):

[1] the nature of the crime, as bearing on the character for veracity of the witness.

[2] the recentness or remoteness of the prior conviction....

[3] the similarity of the prior crime to the charged crime, insofar as a close resemblance may lead the jury to punish the accused as a bad person.

[4] the importance of credibility issues in determining the truth in a prosecution tried without decisive nontestimonial evidence....

[5] the importance of the accused's testimony, as perhaps warranting the exclusion of convictions probative of the accused's character for veracity....

*Id.* at 1334.

■ The State contends that this defendant had an "extensive record of prior felony convictions," including rape. Although defendant's rap sheet, which was presented at the preliminary hearing, shows only a June 1979 conviction for escape (two counts) and a 1970 conviction for arson, defendant testified at his sentencing hearing that he had also been convicted for rape in 1974 and for kidnapping.[1] The 1970 conviction was more than ten years old at the time of trial and therefore was inadmissible without advance written notice of the prosecutor's intent to use such evidence. Utah R. Evid. 609(b). No such written notice was provided in this case. While the rap sheet shows arrests for other felonies, there is no indication in the record that defendant was convicted of those offenses. Under these circumstances, the only convictions available for impeachment purposes were the 1974 conviction for rape and the 1979 convictions for escape.

Applying the factors we identified in *Banner* to the rape and escape convictions, we conclude that the trial court abused its discretion in refusing to suppress them. The State did not offer any discussion concerning the probative or prejudicial aspects of defendant's prior convictions. However, we find that the prejudicial character of the convictions outweighs their possible probative value and that defendant should have been able to testify in his own behalf without being cross-examined concerning them.

The prejudicial effect of the rape conviction as measured by the *Banner* factors clearly weighs in favor of exclusion. The crime of rape "does not inherently reflect on defendant's character for truth and veracity. Instead, it sheds about the same light as any felony involving moral turpitude." *Banner,* 717 P.2d at 1334–35. The other factors also weigh in defendant's favor. The rape conviction was ten years old at the time of this trial. The conviction's remoteness is a measure of its negligible probative value. Also significant is the similarity between the conviction and the crime for which defendant was tried, aggravated sexual assault. This was highly likely to prejudice jurors and unduly influence their conclusion concerning defendant's guilt. Finally, the State relied heavily upon the testimonial evidence offered by

---

1. Defendant did not specify the year of his conviction for kidnapping, and it was not listed on his rap sheet. As no evidence was offered concerning the date of the conviction, we will assume that it was more than ten years old and therefore inadmissible. If the conviction is in fact ten years old or less, it may be used to impeach defendant upon retrial if the trial court is persuaded that the conviction's probative value outweighs its prejudicial effect. Even without considering the kidnapping conviction, we would reverse and remand.

the victim to establish defendant's guilt. Defendant's testimony would have been probative regarding the victim's credibility and possibly influential in the trial's outcome. Based on this evaluation, we conclude that the trial court abused its discretion in failing to exclude defendant's prior rape conviction.

Likewise, the convictions for escape should have been excluded because of their remoteness in time (five years prior to trial) and the complete lack of connection between the crime of escape and defendant's veracity.

■ In *Banner*, this Court stated that the standard for error in cases involving a wrongful failure to exclude prior convictions is whether "there was 'a reasonable likelihood of a more favorable result for the defendant.'" *State v. Knight*, 734 P.2d 913, 920 (Utah 1987); *Banner*, 717 P.2d at 1335 (citing *State v. Fontana*, 680 P.2d 1042 (Utah 1984)). After a review of the record, we are persuaded that there is a reasonable likelihood that the result would have been different had defendant's prior convictions been excluded and had defendant taken the stand. Defendant's testimony might have convinced the jury that the events related by the victim were untrue. Because of this, we reverse defendant's conviction and remand for a new trial.

■ Defendant also sought to introduce evidence of his prior sexual relations with the victim by having Sharon Knerr testify regarding statements defendant had made to her. At trial, defendant argued that those statements were admissible as a statement against penal interest. *See* Utah R.Evid. 804(b)(3). Under rule 804(b)(3), "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Here, no such corroborating evidence was offered by defendant suggesting that his statement of prior sexual activity with the victim was especially trustworthy. Thus, we find no error in the trial court's ruling on this issue.

■ Defendant also contends that the trial court erred in refusing to allow a hearsay statement of Ranae Brewer, an unavailable witness. Defendant sought to admit Ranae Brewer's statement that she was "going to get the defendant." Defendant suggests that this was a statement against penal interest, admissible pursuant to rule 804(b)(3) because it implicated the victim and Ranae Brewer in a conspiracy to get even with defendant. The trial judge ruled that the statement was "hearsay and not proper and not material to the case."

The record indicates that the court ruled the statements of Ranae Brewer inadmissible on the ground that the hearsay statements were irrelevant. Under rule 401, relevant evidence is that evidence which has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Utah R.Evid. 401.

Defendant argues that Ms. Brewer's statement is relevant to show the victim's motive to lie. However, in order for the statements of Ranae Brewer to be relevant to the victim's motive to lie, defendant needed to show that the victim and Ms. Brewer acted in concert. At trial, the victim testified that she was unsure whether she even knew Ms. Brewer. While one of defendant's witnesses testified that she had seen Ms. Brewer and the victim at Burningham's Truck Stop, there is no evidence that they were seen at the same time or that they knew each other. We think the evidence connecting Ms. Brewer and the victim was too remote to make Ms. Brewer's statement relevant. Under these circumstances, the statement of Ms. Brewer would not have been important to prove or disprove any fact of consequence. We find that the trial court did not abuse its discretion in failing to admit the hearsay statements of Ranae Brewer.

■ Finally, defendant contends that the evidence was insufficient to support the jury verdict. Because similar evidence may be offered at a new trial, we treat this claim. This Court will not lightly overturn a jury verdict for insufficient evidence.

The jury verdict must stand unless the "'evidence produced at trial is so lacking and unsubstantial that reasonable minds must necessarily entertain a reasonable doubt of defendant's guilt.'" *State v. Gray*, 717 P.2d 1313, 1320 (Utah 1986) (quoting *State v. McCullar*, 674 P.2d 117, 118 (Utah 1983)). This Court will review the evidence presented at trial in the light most favorable to the jury verdict. *Id.*

Defendant argues that inconsistencies between the victim's testimony and the testimony of defendant's witnesses lead to the conclusion that the victim's testimony is too unbelievable to support a jury verdict. We cannot agree. The credibility of witnesses and the weight to be given to conflicting testimony are matters within the province of the jury. *See State v. Wilson*, 608 P.2d 1237, 1239 (Utah 1980). Although the victim had different recollections of certain details of the assault, that fact is insufficient to reverse the conviction. In *State v. Nebeker*, 657 P.2d 1359 (Utah 1983), the victim contradicted herself as to her assailant's description. There, we held that the victim's reliability was "not necessarily impugned because her initial description did not precisely match the defendant. Her description of the assailant was generally consistent with defendant's appearance, and it was the jury's duty to resolve the reliability of this testimony." *Id.* at 1362.

As in *Nebeker*, the victim's description of defendant was consistent with his general appearance. Moreover, she was able to identify characteristics of defendant with specificity—i.e., the tattoo on his hand, the type of truck he was driving, and the truck's license plate number. Further, the victim was able to pick defendant's picture from a five-photo array one day after the incident.

In addition, the evidence revealed that the victim was emotionally distraught when officers arrived on the scene. The jury was not obligated to believe the testimony offered by defendant in lieu of the evidence of the victim. We find sufficient and competent evidence on this record to sustain a jury verdict.

Based upon the trial court's improper failure to exclude defendant's prior convictions, we reverse defendant's conviction and remand for a new trial to be conducted in a manner consistent with other rulings in this opinion.

HALL, C.J., STEWART, Associate C.J., and HOWE and ZIMMERMAN, JJ., concur.