STATE of Utah, Plaintiff and Petitioner,

v.

David L. WORKMAN and Nita Workman, Defendants and Respondents.

No. 910190.

Supreme Court of Utah.

April 30, 1993.

---

R. Paul Van Dam, Sandra L. Sjogren, Salt Lake City, for plaintiff and petitioner.

Edwin Beus, Salt Lake City, for defendants and respondents.

STEWART, Justice:

David and Nita Workman were charged with aggravated sexual abuse of a child, a first degree felony, and sexual exploitation of a minor, a second degree felony. Nita Workman was also charged with obstructing justice. A jury acquitted the Workmans on the aggravated sexual abuse charges, convicted them of sexual exploitation of a minor, and convicted Nita Workman of obstructing justice. The trial judge arrested judgment, and the State appealed. The court of appeals affirmed. *State v. Workman*, 806 P.2d 1198 (Utah Ct.App. 1991). We granted the State's petition for a writ of certiorari to determine whether the court of appeals applied the correct standard in reviewing the trial court's order arresting judgment.

David and Nita Workman are the parents of thirteen children, including a daughter whom we identify only as E. Eleven or twelve of the children were living at home in 1985, when the Workmans met and befriended Clinton Kelly during a family vacation in Idaho. Kelly, who was in the Navy, began visiting the Workmans in their Layton, Utah home from about 1985 or 1986 to 1988. He visited the family approximately six times in 1986, four times in 1987, and once or twice in 1988. While visiting the Workmans, Kelly presented himself "as a clean cut, polite young man who was impressed with the Workmans' family life and who was interested in learning more about the Workmans' religious beliefs." *Id.* at 1199. When visiting, he slept in the home and shared meals. He also participated in the chores and attended church with the Workmans. Kelly was later convicted of sexually abusing E. based on events that occurred in 1987 and 1988.

Over the two and one-half years that Kelly visited the Workmans, he showed a particular interest and attachment to E., who was seven years old in 1986. Over time, he gave her gifts of jewelry and clothing, which included panties, bras, Easter dresses, a coat, and overalls. He also paid ten dollars per week for E.'s ice skating lessons, sent her roses on several occasions, and telephoned her frequently from San Diego, where he was stationed.

During the time in question, Mrs. Workman was occupied with cleaning, cooking, canning, gardening, yard work, laundry, chauffeuring, and other daily tasks necessary to the maintenance of a large household. Her workload was increased by Mr. Workman's epilepsy, which prevented him from driving.

The Workmans' conviction for sexual exploitation of a minor was based on one photograph that Kelly took of E. in the early part of 1986 and circumstantial evidence arising from Kelly's conduct. Shortly before taking the photograph, Kelly purchased Mary Lou Retton gymnastics suits for E. and three of her sisters. The suits were cut high on the outer thigh and patterned after the one worn by Mary Lou Retton in the 1984 Olympics. Their style is similar to those commonly worn by female gymnasts in public, both locally and nationally. The suits, when properly worn, expose the lower part of the wearer's buttocks.

Kelly took three photographs of E. wearing her gymnastics suit. The first two photographs show E. casually standing in her parents' bedroom, apparently showing off the new suit. Mr. Workman is shown lying on the bed, with Mrs. Workman leaning back against his upraised knee. Both are fully clothed in daytime attire and appear to be conversing with each other. The third photograph, which is the basis for the conviction, shows E. bending over the bed toward her mother, with her buttocks toward the camera. Just prior to taking the photograph, Kelly pulled the bottom of E.'s suit up at the thighs and pulled down her panties, which she wore under the suit, thereby exposing the cheeks of her buttocks. E.'s private parts were, however, fully covered. Mr. and Mrs. Workman appear in the background of this picture also, but Mrs. Workman's body is visible only from the waist down, making it impossible to determine where she was looking. Mr. Workman, whose face appears in the picture, is looking toward the camera, but his

view of E.'s buttocks appears to be blocked by Mrs. Workman's body.

The State insists that the Workmans knew at the time the picture was taken that Kelly was photographing E. with her buttocks exposed. Kelly testified at the preliminary hearing that the Workmans reacted angrily when he took the photograph, but at trial he testified that he could not remember the Workmans' reaction, if any, but guessed that Mrs. Workman was upset. The Workmans testified that they did not remember the photo being taken and that they were not aware that it existed until the police showed it to them in 1988.

The trial judge arrested judgment for the sexual exploitation convictions on the ground that there was no evidence that the Workmans had the requisite mental state. In a unanimous opinion written by Judge Garff, the court of appeals affirmed, holding that the State's evidence of the Workmans' mental state, as required by the sexual exploitation statute, was so inherently improbable that reasonable minds could not have convicted the couple.

The issue on certiorari is whether the court of appeals applied the correct legal standard in reviewing the trial court's order arresting judgment.[1] The State argues that in reviewing the trial court's arrest of judgment, the court of appeals did not view the evidence in a light most favorable to the jury verdict, but impermissibly reweighed conflicting evidence to reach a different result. We disagree.

■ Rule 23 of the Utah Rules of Criminal Procedure provides that a trial court may arrest judgment "if the facts proved or admitted do not constitute a public offense." The standard for determining whether an order arresting judgment is erroneous is the same as that applied by an appellate court in determining whether a jury verdict should be set aside for insufficient evidence. Under that standard, a trial court may arrest a jury verdict when the evidence, viewed in the light most favorable to the verdict, is so inconclusive or so

inherently improbable as to an element of the crime that reasonable minds must have entertained a reasonable doubt as to that element. *State v. Petree*, 659 P.2d 443, 444 (Utah 1983); *State v. McCardell*, 652 P.2d 942, 945 (Utah 1982); *State v. Romero*, 554 P.2d 216, 219 (Utah 1976).

■ When the evidence presented is conflicting or disputed, the jury serves as the exclusive judge of both the credibility of witnesses and the weight to be given particular evidence. *State v. Myers*, 606 P.2d 250, 253 (Utah 1980); *State v. Gentry*, 747 P.2d 1032, 1039 (Utah 1987); *State v. Logan*, 563 P.2d 811, 813 (Utah 1977); *State v. Harless*, 23 Utah 2d 128, 459 P.2d 210, 211 (1969). Ordinarily, a reviewing court may not reassess credibility or reweigh the evidence, but must resolve conflicts in the evidence in favor of the jury verdict. *Logan*, 563 P.2d at 813–14. In some unusual circumstances, however, a reviewing court may reassess witness credibility. For example, "testimony which is inherently improbable may be disregarded, ... but to warrant such action there must exist either a physical impossibility of the evidence being true, or its falsity must be apparent, without any resort to inferences or deductions." *Curtis v. DeAtley*, 104 Idaho 787, 663 P.2d 1089, 1092 (1983) (quoting *Dinneen v. Finch*, 100 Idaho 620, 603 P.2d 575, 582 (1979)); *see also Siruta v. Hesston Corp.*, 232 Kan. 654, 659 P.2d 799, 806 (1983) (evidence may be disregarded when it is "clearly contrary to some immutable law of physics or is hopelessly in conflict with one or more established and uncontroverted physical facts"). Thus, a reviewing court may evaluate whether the evidence is so inconclusive or inherently improbable that it could not support a finding of guilt beyond a reasonable doubt. *Petree*, 659 P.2d at 445; *see also State v. Webb*, 779 P.2d 1108, 1114 (Utah 1989) (opinion of Stewart, J., stating the position of the Court).

In the instant case, the evidence is not in conflict with respect to the statutory ele-

---

1. Because this case involves a question of law, we review the court of appeals' decision for    correctness.

ments of the crime of sexual exploitation of a minor. As the State concedes, the evidence against the Workmans on the sexual exploitation charge consists solely of the photograph of E., described above, and evidence that the Workmans were aware of some inappropriate, but not illegal, behavior by Kelly toward E.[2] The photograph speaks for itself and raises no issue of credibility. The issue of the Workmans' innocence or guilt, therefore, turns solely on the inferences that can be reasonably and logically drawn from the evidence.

■ When, as here, the evidence consists solely of undisputed, circumstantial evidence, the role of the reviewing court is to determine (1) whether there is any evidence that supports each and every element of the crime charged, and (2) whether the inferences that can be drawn from that evidence have a basis in logic and reasonable human experience sufficient to prove each legal element of the offense beyond a reasonable doubt. A guilty verdict is not legally valid if it is based solely on inferences that give rise to only remote or speculative possibilities of guilt.

■ Utah Code Ann. § 76–5a–3(1) (1990) defines the crime of sexual exploitation of a minor as follows:

A person is guilty of sexual exploitation of a minor:

(a) When he knowingly produces, distributes, possesses, or possesses with intent to distribute, material or a live performance depicting a nude or partially nude minor for the purpose of sexual arousal of any person or any person's engagement in sexual conduct with the minor.

(b) If he is a minor's parent or legal guardian and knowingly consents to or permits that minor to be sexually exploited under Subsection (1)(a) above.

Section 76–5a–2 (1990) defines partial nudity as "any state of dress or undress in which the human ... buttocks ... is less than completely and opaquely covered."[3]

To convict the Workmans under this statute, the State had to prove that (1) the Workmans *knowingly* consented to or permitted Kelly (2) to knowingly photograph E. in a nude or partially nude state (3) with intent to possess the photograph (4) for the purpose of his sexual arousal. Implicit in the fourth element is the requirement that the photograph had some capacity to cause sexual arousal.

Although the State derives some support for its position from Kelly's conduct, such as giving E. gifts, the State's case really hinges on the inferences that can be drawn from the photograph described above with regard to the Workmans' state of mind. The State argues that the appearance of Mr. and Mrs. Workman in the photograph supports an inference that they knew that Kelly took a photograph of E. with her buttocks exposed and that they knew Kelly would use the photograph for sexual arousal. *See* § 76–5a–3(1)(b). Although the appearance of the Workmans in the photograph supports an inference that they knew it had been taken, the photograph by itself does not support an inference that the Workmans "knowingly" permitted Kelly to take a picture of E.'s exposed buttocks. Mrs. Workman's body is visible only from the waist down, making it impossible to know where she was looking, and although Mr. Workman is looking toward the camera, his view of E.'s buttocks appears to be blocked by Mrs. Workman's body.

In addition, there is no inference whatsoever that they *knew* that Kelly would use the picture for sexual arousal. On its face, the photograph certainly has no alluring, sensual, or sexual quality to it. There is no evidence that the picture could have been used by anyone for that purpose, no matter how sexually eccentric he or she might be. Indeed, the State presented no evidence that Kelly or anyone else ever actually

---

2. The jury's acquittal on the child sexual abuse charge indicates that the State failed to prove that the Workmans knew of Kelly's sexual abuse of E.

3. We note that many French-cut swimming and athletic suits commonly worn in public would technically fall within this definition.

used the photograph for sexual arousal or that Kelly or anyone else found the photograph sexually arousing. Although Kelly testified that he had sexually abused E., he did not testify that the photograph had sexually aroused him or that he took it, or possessed it, for the purpose of being aroused or that he told defendants or anyone else that it aroused him. Furthermore, no expert testified that pedophiles might find this photograph arousing. In short, the State presented *no evidence* that the photograph was, or could be, sexually arousing, and of equal importance, there is *no evidence* that Kelly took the photograph for that purpose. The total lack of evidence on this fact alone is a sufficient basis for affirming the court of appeals.[4]

But even if we were to assume that the photograph could have been used for sexual arousal, the State presented *no probative evidence* that the Workmans *knew* Kelly had taken the picture for that purpose. The State asserts that the jury could infer that the Workmans knew that Kelly

would use the photograph for sexual arousal from evidence that Kelly behaved improperly toward E. In the summer of 1987, sometime after the photograph was taken, a neighbor told Mrs. Workman that her daughter and granddaughter saw Kelly kissing E. and touching her inappropriately underwater in a swimming pool. Mrs. Workman told the neighbor that she would ask Kelly to leave. Upon Mrs. Workman's inquiries, E., Kelly, and the other children who were with them at the pool denied that anything inappropriate had happened. On two occasions in 1987, Mrs. Workman found Kelly lying in bed with E. On the first occasion, Kelly was wearing jeans, but no shirt; the second time, he was fully clothed. E. was fully clothed on both occasions. Mrs. Workman testified that Kelly in both instances told her that he had arrived moments earlier to awaken E. Mrs. Workman reprimanded Kelly both times. In addition, the State points to Kelly's lavish gift giving as evidence of the Workmans' knowledge.

---

**4.** Justice Howe states in his concurring-in-the-result opinion:

> I particularly have grave doubt about Justice Stewart's statement that "[t]here is no evidence that the picture *could have been* used by anyone for [sexual arousal], no matter how sexually eccentric he or she might be." (Emphasis added [by Justice Howe].) *I believe that the legislature has already made the determination that pictures of minors with their buttocks exposed are capable of sexually arousing persons who may take or view them.... Nudity alone is sufficient.*

(Emphasis added.)

Either Justice Howe has misread my opinion to mean that there must be independent evidence in all cases that a picture of a child's nude buttocks is sexually arousing, or he has misconstrued the statute. I do not take the position that there must be independent evidence that a picture of a child's nude buttocks is capable of sexually arousing the viewer in all cases. As stated in the opinion, there is no direct evidence that Kelly took the photograph "for the purpose of sexual arousal." *See* § 76–5a–3(1). Nor is there any indirect evidence to that effect. Clearly, a photograph by itself may be sufficient to establish an evidentiary inference that it is sexually arousing. But where, as here, a photograph does not lend itself to such an inference, the prosecution must present some extrinsic evidence to show that the photograph would be sexually arousing to eccentric or deviant persons. Obviously, if a photograph is not sexually arousing to anyone, it would not have been

taken "for the purpose of sexual arousal." § 76–5a–3(1)(a). Extrinsic evidence may include, but is not limited to, expert testimony that some kinds of photographs might be sexually arousing to some, if only a few, people.

On the other hand, if Justice Howe's position rests, as I think it does, on a construction of the statute to the effect that *all* photographs of children's bare buttocks are sexually arousing, that construction would lead to absurd results and constitute an unconstitutional presumption under *Tot v. United States*, 319 U.S. 463, 467–68, 63 S.Ct. 1241, 1244–45, 87 L.Ed. 1519 (1943). The statute does not make it a criminal offense simply to take or possess a photograph of a child with bare buttocks. To constitute an offense, § 76–5a–3(1) requires that the photograph must have been taken "for the purpose of sexual arousal." Under what I think is Justice Howe's analysis, a jury could draw an inference from any photograph showing a child's exposed buttocks that the picture was taken or possessed for the purpose of sexual arousal. On that theory, all parents who take photographs of their children with bare or partially bare buttocks could be prosecuted under the statute. Moreover, any number of persons and businesses that possess or distribute advertisements for suntan lotion (e.g., Coppertone Suntan lotion), diapers, soap, and a number of other ordinary consumer products, could also be prosecuted under the statute.

Significantly, the evidence does not establish the exact date on which the photograph was taken or, more importantly, when the photo was taken in relation to the events from which the State asserts the Workmans' mental state may be inferred. Kelly testified that he took pictures of E. in which "her genitals or her buttocks" were exposed in 1987, or perhaps 1986, but he did not identify those photographs and did not state whether they included the photograph at issue here. In fact, there is no photograph in the record that shows E.'s genitalia, and the only photograph showing E.'s exposed buttocks is the one the State relies on. Kelly also testified that he bought the Mary Lou Retton gymnastics suits in 1986. Mrs. Workman testified that she thought the picture might have been taken the day Kelly purchased the suits, sometime in late 1986 or early 1987. Thus, the photograph at issue was taken before the gift giving that took place in 1987 and 1988 and before the neighbor reported her suspicions in the summer of 1987. Kelly testified that he was found in bed with E. probably sometime in 1986, but he could not recall whether that happened before or after he took the photo.

The State also asserts that Kelly's testimony at the preliminary hearing that the Workmans reacted angrily to the taking of the picture supports an inference that they knew the photograph had been taken. That knowledge, however, does not support an inference that they knew Kelly would use it for sexual arousal; indeed, the logical inference that arises from this testimony is that the Workmans did not consent to Kelly's taking the picture.

Taken together, these events establish no probative inference that the Workmans knew, when the photograph was taken, either that E.'s buttocks were exposed or that the photograph could be used for Kelly's sexual arousal.

Even when viewed in a light most favorable to the jury's verdict, the State's evidence simply does not support a reasonable inference that the Workmans had the mental state required by the statute for a lawful conviction. Criminal convictions cannot rest on conjecture or supposition; they must be established by proof beyond a reasonable doubt. Arguing, as the State does, that speculative inferences can constitute proof beyond a reasonable doubt is to attack one of the most sacred constitutional safeguards at its core.

Of course, it does not follow that a court is free to arrest judgment simply because it disagrees with the inferences a jury draws. A jury may choose which, among several reasonable inferences, to believe. But when the inference of guilt does not logically flow from the evidence, it is incumbent on a reviewing court to set the verdict aside. In sum, the court of appeals correctly held that the State did not meet its burden of proof and that the evidence was insufficient to support the jury verdict.

■ We reach the same conclusion with respect to the verdict of obstruction of justice. To convict Mrs. Workman of that crime, the jury had to find that she knew that Kelly sexually abused E. and that she either (1) concealed that fact from a magistrate, (2) warned Kelly of impending discovery, (3) concealed evidence from the police, or (4) attempted to obstruct anyone from performing an act which would aid in the conviction of Kelly. Utah Code Ann. § 76-8-306. Nothing in the record indicates that Mrs. Workman did any of these things. Had the jury believed that Mrs. Workman knew Kelly was abusing E., it would have convicted her on the aggravated child sexual abuse charge. There is absolutely no evidence, direct or circumstantial, that Mrs. Workman warned Kelly that he was under investigation or that she concealed evidence. In fact, she promptly produced clothing and photographs and answered the investigator's questions. The uncontroverted evidence demonstrates that Mrs. Workman fully cooperated with the police during their investigation of Kelly.

Affirmed.

DURHAM, J., concurs.

HOWE, Associate Chief Justice (Concurring in the Result):

I concur in the result on the ground that "the photograph by itself does not support

an inference that the Workmans 'knowingly' permitted Kelly to take a picture of E.'s exposed buttocks," as explained in the lead opinion.

I would not reach beyond that in this case. I particularly have grave doubt about Justice Stewart's statement that "[t]here is no evidence that the picture *could have been* used by anyone for [sexual arousal], no matter how sexually eccentric he or she might be." (Emphasis added.) I believe that the legislature has already made the determination that pictures of minors with their buttocks exposed are capable of sexually arousing persons who may take or view them. In section 76–5a–3, the legislature made it a criminal offense to produce material depicting a nude or partially nude minor for the purpose of sexual arousal. Partial nudity is defined in part as any state of undress in which the human buttocks are less than completely and opaquely covered. Utah Code Ann. § 76–5a–2. It matters not that Justice Stewart finds that the picture has no "alluring or sensual quality to it." That is not a statutory requirement. Nudity alone is sufficient. Although Kelly did not testify that he took or possessed the picture for the purpose of arousing himself, I think a jury could reasonably draw that inference under the facts of this case, given Kelly's unusual physical attraction to E. Juries regularly determine a defendant's state of mind by inference from the evidence. Justice Stewart does not suggest any other purpose Kelly might have had. It follows that I also disagree with his implication that expert testimony might be necessary to establish that this photograph could be sexually arousing. A prosecutor does not have that burden.

HALL, C.J., and ZIMMERMAN, J., concur in HOWE, Associate C.J.'s, concurring in the result opinion.