2002 UT App 128

**STATE of Utah, Plaintiff and Appellee,**

v.

**Kent Karl KIRKWOOD, Defendant and Appellant.**

**No. 20010321–CA.**

Court of Appeals of Utah.

April 25, 2002.

Kent R. Hart, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Marian Decker, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BILLINGS, GREENWOOD, and ORME.

## OPINION

GREENWOOD, Judge:

¶ 1 Defendant Kent Kirkwood appeals his conviction for Possession of a Dangerous Weapon by a Restricted Person, a third degree felony, in violation of Utah Code Ann. § 76–10–503(2)(a) (1999). Defendant argues that the trial court committed reversible error under Rule 404(b) of the Utah Rules of Evidence by conditionally ruling that the State could introduce evidence of Kirkwood's past crime if he testified. The State argues that the record is insufficient for this court to review Kirkwood's claim because he did not testify. We agree and therefore affirm.

## BACKGROUND [1]

¶ 2 In August 2000, Defendant was serving probation for a second degree felony robbery conviction, during which he had used a knife. One condition of his probation was that he not possess any dangerous weapons. Pursuant to Defendant's probation agreement, Officers Hansen and Poor visited Defendant's home to conduct an impromptu search. Defendant voluntarily submitted to a pat down search that failed to uncover any weapons or contraband on Defendant's person.

¶ 3 The officers then searched Defendant's home. Upon searching Defendant's bedroom, the officers discovered a knife on the table next to Defendant's bed. The knife had a curved, four-inch blade with a handle made of wood or bone. Defendant stated that he had used the knife to eat the night before and to cut tape. However, Officer Hansen found no trace of food on the knife or other evidence that Defendant had eaten in the room.

¶ 4 Officer Poor also found a folding knife with a three-inch blade inside a duffel bag. There was nothing else inside the bag. Defendant explained that the knife in the bag belonged to a friend. The officers then arrested Defendant. Upon further questioning, Defendant revealed he also had a multipurpose tool containing several blades. The officers also discovered a pocket knife located inside a tool box. Other police officers arrived later and searched the entire house, with the exception of kitchen drawers and cupboards, and found no other weapons.

¶ 5 Despite the other knives in his room, the State charged Defendant only for the knife on the table next to the bed and the knife in the duffel bag. At trial, the parties stipulated that Defendant was a restricted person because of his probation status. During opening statements, defense counsel told the jury that Defendant would testify that he intended to use the knife as a utensil and not as a weapon.

¶ 6 On cross-examination of Officer Hansen, defense counsel elicited testimony that

Defendant could legally use a knife to eat and as a tool to cut tape. On redirect, the State requested a hearing outside the jury's presence to discuss whether the State could elicit from Officer Hansen that Defendant had committed his robbery offense with the use of a knife. The State claimed that Defendant had opened the door to this type of questioning by distinguishing between the use of the knife as a tool and as a dangerous weapon. The State claimed that because Defendant used a knife in his past crime, he was more likely to possess the knife as a weapon in the present case. Defendant objected on the basis that the evidence was not relevant and would be unfairly prejudicial. The trial court ruled that the State could not ask Officer Hansen about the knife because she did not have personal knowledge of Defendant's past robbery offense.

¶ 7 After the State had rested, however, the trial court changed its ruling. During a hearing outside of the presence of the jury, the trial court ruled that if Defendant testified, the State would be allowed to ask about his use of a knife in his past robbery offense in order to show intent in the present case. The trial court ruled that while the use of the knife was not "overwhelmingly relevant" to determine whether Defendant intended to possess a weapon in this case, it was relevant enough. The trial court further ruled the evidence of the knife in the prior offense was not unfairly prejudicial since the jury already knew Defendant had been convicted of robbery. Finally, the trial court ruled that Defendant's distinction between using the knife as a tool and as a weapon opened the door for the State to ask about the use of a knife in the prior offense.

¶ 8 Following the trial court's ruling, the defense rested without presenting any witnesses. The jury acquitted Defendant of possessing the knife in the gym bag, but convicted him for possessing the knife on the table next to his bed. The trial court sentenced Defendant to a term of up to five years in prison and ordered his sentence to

---

**1.** The facts are stated in the light most favorable to the jury verdict. *See State v. Webster,* 2001 UT App 238, ¶ 2, 32 P.3d 976.

run consecutively to the sentence for his robbery conviction. This appeal followed.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 9 Because we are persuaded by the State's argument that Defendant failed to preserve his claim, and thus the record is insufficient for appellate review, we address only that issue. We determine whether the record is adequate for appellate review as a matter of law. *See State v. Wetzel*, 868 P.2d 64, 67 (Utah 1993) ("This Court simply cannot rule on a question which depends for its existence upon alleged facts unsupported by the record." (citations and quotations omitted)). We also determine whether, as a matter of law, a defendant must testify to preserve a claim under rule 404(b).

## ANALYSIS

¶ 10 The State argues that we should apply the Utah Supreme Court's rationale in *State v. Gentry*, 747 P.2d 1032, 1036 (Utah 1987), to this case by requiring criminal defendants to testify in order to preserve their objection under Utah Rule of Evidence 404(b)[2] for appellate review. In *Gentry*, the supreme court held that under Rule 609(a) of the Utah Rules of Evidence,[3] "[t]o preserve for appellate review a claim of improper impeachment with a prior conviction, a defendant must testify." *Id.* The *Gentry* court adopted the United States Supreme Court's reasoning in

*Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984):

> Requiring that a defendant testify in order to preserve Rule 609(a) claims, will enable the reviewing court to determine the impact any erroneous impeachment may have had in light of the record as a whole; it will also tend to discourage making such motions solely to "plant" reversible error in the event of conviction.

*Gentry*, 747 P.2d at 1036 (quoting *Luce*, 469 U.S. at 42, 105 S.Ct. at 464).

¶ 11 Only three jurisdictions have addressed whether *Luce* should be applied to rule 404(b) cases. In *United States v. Johnson*, 767 F.2d 1259, 1269 (8th Cir.1985), the government filed pretrial motions expressing its intent to introduce other crimes evidence against the defendants if the defendants testified. *See id.* at 1269. The defendants chose not to testify, allegedly because of the trial court's ruling. *See id.* The court ruled that even though *Luce* was decided under rule 609(a)(1), the "logic [of *Luce*] applies with equal force to motions under rule 404(b)." *Id.* at 1270. The *Johnson* court noted that both rules 404(b) and 609(a)(1) require that the trial court balance probative value and unfair prejudice. *See id.* at 1270 n. 9; Fed.R.Evid. 404(b), 609(a)(1); *see also United States v. Ortiz*, 857 F.2d 900, 905 (2d Cir.1988) ("[Defendant] cannot now challenge the evidentiary ruling because the [defen-

---

**2.** The prior version of Rule 404(b) of the Utah Rules of Evidence, in effect at the time of Defendant's trial, stated:

> (b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In other words, evidence offered under this rule is admissible if it is relevant for a non-character purpose and meets the requirements of Rules 402 and 403.

Under Utah Rule of Evidence 403, the trial court must balance the probative value and prejudicial effect of the evidence. Furthermore, we note that even if the current rule 404(b) were at issue, the analysis would be the same. *See* Utah R. Evid. 404(b) Advisory Committee Note ("Evidence sought to be admitted under Rule 404(b) must also conform with Rules 402 and 403 to be admissible.").

**3.** Rule 609(a) of the Utah Rules of Evidence states:

> (a) General rule. For the purpose of attacking the credibility of a witness,
> (1) evidence that a witness other than the accused has been convicted of a crime shall be admitted, *subject to Rule 403*, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the *probative value of admitting this evidence outweighs its prejudicial effect* to the accused; and
> (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

(Emphasis added.)

dant's failure to testify] caused an inadequate record for review. Otherwise, we would be forced to speculate on whether an evidentiary ruling denied [the defendant] a fair trial or was merely harmless error."). Since both rules require a similar balancing test, a reviewing court needs the same amount of detail in the record to review rule 404(b) objections as it does for rule 609 objections.

¶ 12 Alaska has also addressed this issue. In *Page v. State*, 725 P.2d 1082 (Alaska Ct. App.1986), the court granted the state's motion in limine to introduce past crimes evidence under rule 404(b) if the defendant testified; thus allegedly causing the defendant not to testify. *See id.* at 1086. The Alaska Court of Appeals ruled that because it did not know what the defendant would have testified to, and did not know if the prosecution would actually address the prior convictions, it did not have an adequate record from which to review the defendant's claims since it would have to speculate. *See id.* at 1086–87.[4]

¶ 13 We are persuaded by the reasoning of the above authorities, and therefore hold that a defendant must testify to preserve his objection to a conditional in limine ruling under rule 404(b). To hold otherwise would require appellate courts to speculate as to whether the alleged error was harmful.

¶ 14 Accordingly, Defendant's objection is not preserved for appeal in view of his decision not to testify. Otherwise, any possible harm flowing from the trial court's conditional ruling is wholly speculative because the jury never heard the past crimes evidence, never heard Defendant's testimony, and never received a limiting instruction from the trial court. By its nature, an in limine ruling is subject to change by the trial court. *See Luce,* 469 U.S. at 41, 105 S.Ct. at 463 ("[T]he district judge is free, in the exercise of sound judicial discretion, to alter a

previous in limine ruling."). Defendant's refusal to testify deprived the trial court of the opportunity to alter its ruling or issue a limiting instruction that would minimize any unfair prejudice that may have resulted from the admission of the evidence. *See State v. Smith,* 700 P.2d 1106, 1110 (Utah 1985) (holding that trial court should issue a limiting instruction cautioning the jury to use past crimes evidence admitted under rule 404(b) only for the purpose for which it was admitted). Moreover, unless Defendant is required to testify to preserve his objection,

> almost any error would result in the windfall of automatic reversal; the appellate court could not logically term "harmless" an error that presumptively kept the defendant from testifying. Requiring that a defendant testify in order to preserve ... claims will enable the reviewing court to determine the impact any erroneous impeachment may have had in light of the record as a whole; it will also tend to discourage making such motions solely to "plant" reversible error in the event of conviction.

*Luce,* 469 U.S. at 42, 105 S.Ct. at 463–64; *see also Ortiz,* 857 F.2d at 906 (stating that unless the defendant testifies the "reviewing court is obliged to indulge in unacceptable appellate speculation"). Therefore, because the jury never heard the past crimes evidence to which Defendant objects, this court is left to speculate about the harm Defendant may have suffered, if any, had he testified and had the State introduced the evidence unmodified by a limiting instruction.

¶ 15 While conceding that the jury did not hear any of the past crimes evidence, Defendant argues that the trial court's ruling forced Defendant not to testify, thus denying him due process. However, this argument is contrary to the Utah Supreme Court's decision in *Gentry.* In *Gentry,* the defendant

---

4. Defendant urges this court to adopt the reasoning in *Wickham v. Alaska,* 770 P.2d 757 (Alaska Ct.App.1989). In *Wickham,* the court allowed an appeal under rule 609, even though the defendant did not testify, because he provided a detailed proffer of testimony, *see id.* at 762 n. 2, and informed the court that he would testify unless the state's motion in limine was granted. *See id.* at 762. However, because we adopt *State v.*

*Gentry,* 747 P.2d 1032 (Utah 1987), for rule 404(b) claims, we decline to follow *Wickham* because *Wickham* is inconsistent with *Gentry's* unequivocal adoption of *Luce. See Gentry,* 747 P.2d at 1036 ("To preserve for appellate review a claim of improper impeachment with a prior conviction, a *defendant must testify."* (Emphasis added)).

argued that he was denied due process because the trial court granted the State's motion in limine to allow the State to inquire about past convictions, thus forcing the defendant not to testify. 747 P.2d at 1036. The supreme court stated:

> Defendant misconstrues the nature of the constitutional right in question. The Constitution affords an accused a choice: He may refuse to become a witness, or he may elect to take the witness stand and testify in his own behalf.... The defendant having exercised his constitutional right to remain silent and not testify, cannot now be heard to complain that the court forced the choice upon him and thereby denied him due process.

*Id.* at 1036 (quoting *State v. McCumber*, 622 P.2d 353, 358 (Utah 1980)).

¶ 16 Defendant further argues that not being able to testify harmed him by denying him his right to an appeal pursuant to Utah Constitution Article I, § 12 and Article VIII, § 5. Both of these constitutional provisions guarantee a criminal defendant the right to an appeal. *See* Utah Const. art. I, § 12 ("In criminal prosecutions the accused shall have ..., the right to appeal in all cases."); art. VIII, § 5 ("Except for matters filed originally with the Supreme Court, there shall be in all cases an appeal of right from the court of original jurisdiction to a court with appellate jurisdiction over the cause.").

¶ 17 However, Defendant has waived his right to appeal because, by not testifying, he cannot demonstrate that the trial court committed reversible error. For an appellate court to reverse a trial court on an evidentiary ruling, the appellant must show: (1) that the trial court erred; and (2) that but for the error, "there is a reasonable likelihood of a more favorable result for the defendant." *State v. Featherson*, 781 P.2d 424, 431 (Utah 1989). Defendant's argument that he was harmed by not being able to preserve his argument for appeal proves nothing as to whether he would have received more favorable treatment from the trial court and therefore strands this court in a land of speculation into which appellate courts ought not to wander. This is consistent with a basic tenet of appellate practice that an issue must be presented in the trial court to be considered on appeal. *See, e.g., State v. Cram*, 2002 UT 37, ¶ 9, 46 P.3d 230 ("As a general rule, claims not raised before the trial court may not be raised on appeal." (citation and quotations omitted)); *State v. Chapman*, 921 P.2d 446, 455 (Utah 1996) (holding that court could not address appellant's claims because he failed to raise them in trial court below). Thus, Defendant has waived his right to appeal by failing to provide an adequate record that this court can use to determine whether he would have received a more favorable verdict absent the trial court's alleged error.

## CONCLUSION

¶ 18 Because he chose to not testify, Defendant has failed to preserve his objection under rule 404(b) for appellate review. Thus, the record is inadequate. Accordingly, we affirm.

¶ 19 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge and GREGORY K. ORME, Judge.